IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CELEBRATE VIRGINIA SOUTH
HOLDING COMPANY, LLC, *et al.*,
      Plaintiffs,

      v.                               Civil No. 3:21cv261 (DJN)

CVAS PROPERTY
MANAGEMENT, LLC, *et al.*,
      Defendants.

## MEMORANDUM OPINION

Plaintiffs Celebrate Virginia South Holding Company, LLC ("CVS Holdings") and UMB CV Holding Company, LLC ("UMB Holdings," collectively, "Plaintiffs") bring this action against Defendants CVAS Property Management, LLC ("CVS Management"), Celebrate Virginia South, L.L.C. ("CVS"), CVAS 2, LLC ("CVAS 2"), CVAS Boulevard, LLC ("Boulevard"), CVAS Parkway, LLC ("Parkway"), SCH at Celebrate Virginia South, LLC ("SCH"), The Collection at Celebrate Virginia South, LLC ("Collection"), CVAS Properties, LLC ("Properties"), CVAS Grocery, LLC ("Grocery"), Rappahannock Quarry West, L.L.C., ("Quarry"), CVA Expo Center, LLC ("Expo"), Celebrate Virginia South Owners Association, Inc. (the "Association") and CVAS Finance, LLC ("Finance") alleging interference with property rights related to land within the unified development Celebrate Virginia South, seeking legal and equitable relief.  This matter now comes before the Court on Defendants' partial Motion to Dismiss (ECF No. 53) filed in response to Plaintiffs' Amended Complaint (ECF No. 51), wherein Defendants move to dismiss Counts Three through Six of the Amended Complaint. For the reasons set forth below, the Court hereby GRANTS Defendants' Motion (ECF No. 53).

# I.    BACKGROUND

At this stage, the Court must accept as true the facts set forth in the Complaint (ECF No. 1). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Against this backdrop, the Court accepts the following facts as alleged for purposes of resolving Defendants' Motion.[1]

## A.    Factual Background

This case involves a commercial, retail and residential common plan development known as Celebrate Virginia South (the "Project"), located in the City of Fredericksburg, Virginia. (Am. Compl. ¶ 21.)  Defendant CVS and the founding entities subjected the Project to various provisions and restrictions that run with the land as set forth in several recorded documents, including a property owners association declaration, the Declaration for Celebrate Virginia South (as amended and supplemented, the "POA Declaration" (ECF No. 51-1)), dated December 16, 2005, and recorded in the land records of the City of Fredericksburg (the "Land Records").  (Am. Compl. ¶¶ 25–28.)  The POA Declaration and "the rights thereunder constitute valid, binding and enforceable contracts between Defendants and any successor purchases of property, including but not limited to Plaintiffs."  (Am. Compl. ¶ 113.)

The POA Declaration states that the Association, the "Declarant"[2] and the additional owners of land in the Project "have decided and intended to subject that land to certain covenants, restrictions, reservations, easements, servitudes, liens and charges, all of which are

---

[1]    The facts accepted below include only those facts relevant to Counts Three through Six, which are the only counts challenged on this Motion to Dismiss.  The Court recounted those facts relevant to Counts One and Two in its Memorandum Opinion ("Mem. Op." (ECF No. 22)) on Defendants' first Motion to Dismiss.  (ECF No. 12.)

[2]    Capitalized words placed in quotation marks within this section denote a term that receives a particular definition under the POA Declaration.  The Court will incorporate such definitions from the POA Declaration where appropriate.

more particularly hereinafter set forth [in the POA Declaration.]" (POA Decl. ¶¶ R-1, R-2.)
Further, those entities "deem[ed] it desirable and in the best interest of all the owners of the land
subject to the Declaration to protect the value and the desirability of such land by providing for
the development of such land in accordance with a common plan and the maintenance of certain
shared facilities, as provided [in the POA Declaration.]" (POA Decl. ¶ R-3.) Among other
things, the POA Declaration established certain easements and provided for payment of common
expenses, assessments, upkeep of the "Association Area," and architectural review and approval
of site plans. (POA Decl. arts. 6-8.)

The POA Declaration establishes that the "Owners" of parcels in the Project comprise the
Association. (POA Decl. § 1.1(32).) The Owners must pay their portion of the "Common
Expenses" through an "Annual Assessment." (POA Decl. §§ 6.1-6.3.) Common Expenses
include "the total amount of the estimated funds required for the management and Upkeep of the
Association Area, including without limitation reserves, and to meet obligations of the
Association established pursuant to this Declaration or other shared Upkeep agreements." (POA
Decl. § 6.2(a).) An Owner only becomes liable for an Annual Assessment once it has installed a
building foundation on its parcel in the Project, or recorded a subdivision plat in the Land
Records. (POA Decl. § 6.2(a)(2)(i)-(ii).)

At the time that CVS and the other founding entities recorded the POA Declaration in
2005, CVS owned nearly all the parcels within the Project. (Am. Compl. ¶ 29.) The POA
Declaration defines "Declarant" as "[CVS] or its assigns pursuant to Article 5 [of the POA
Declaration] or pursuant to any instrument properly recorded in the Land Records and executed
by the Declarant." (POA Decl. § 1.1(19).) Further, it provides that the Declarant has certain
rights ("Declarant Rights") during the "Declarant Control Period." (Am. Compl. ¶ 32.)

Defendants have transferred Declarant Rights on several occasions, including in 2007, 2011, and 2018. (Am. Compl. ¶¶ 36-38, 52-53; Exs. H (ECF No. 51-8), I (ECF No. 51-9), and K (ECF No. 51-11).)  After Defendants CVS, CVAS 2, Boulevard and Parkway (collectively, the "Foreclosure Defendants") did not pay various taxes and assessments levied on parcels within the Project, the City sold certain parcels owned by the Foreclosure Defendants at a tax sale on May 31, 2018 (the "Tax Sale").  (Am. Compl. ¶¶ 41-47.)  At the Tax Sale, Plaintiff CVS Holdings acquired three parcels.  (Am. Compl. ¶ 48.)  Plaintiff UMB Holdings later acquired fee title to a fourth parcel.  (Am. Compl. ¶ 48.)  Non-party UMB Bank controls both CVS Holdings and UMB Holdings in its capacity as trustee for the Series 2006 Bonds, issued to fund the public infrastructure benefitting the Project, and trust assets for the benefit of the bondholders.  (Am. Compl. ¶¶ 24, 49.)  The POA Declaration and its rights and restrictions apply to Plaintiffs' parcels.  (Am. Compl. ¶ 50.)

Three weeks before the Tax Sale, on May 10, 2018, pursuant to an instrument titled "Transfer and Assignment of Declarant Rights Under Declaration for Celebrate Virginia South" (the "2018 Declarant Rights Transfer") (Ex. K), recorded among the Land Records on May 14, 2018, the Foreclosure Defendants assigned their Declarant Rights to related entities Defendants CVAS P10, LLC (which changed its name to SCH), Collection, Quarry, Properties, Expo and Grocery (collectively, the "Successor Declarants"), all of which previously owned property within the Project.  (Am. Compl. ¶¶ 52-53; 2018 Declarant Rights Transfer ¶ R-4.)  The POA Declaration requires that the transfer of Declarant Rights occur in conjunction with the act of acquiring parcels. (Am. Compl. ¶ 65; Mem. Op. at 17-26.)  The 2018 Declarant Rights Transfer proves void, because it did not occur in conjunction with the act of acquiring parcels.  (Am. Compl. ¶ 70.)

4

During the Declarant Control Period, the Association executed a note, dated January 31, 2007, for an amount of up to $281,707.52 (the "Note") (Ex. DD (ECF No. 51-20)), payable to CVS, pledging as security the Assignment of Assessment Income and Security Agreement (the "Security Agreement").  (Am. Compl. ¶ 76.)  CVS and the Association then assigned the Note and Security Agreement to Defendant Finance and amended the note to increase the amount due to $531,707.52 (together the "Declarant Loan").  (Am. Compl. ¶ 77.)  The Declarant Loan currently has an outstanding principal amount of approximately $275,000.  (Am. Compl. ¶ 77.)

Following the 2018 Tax Sale, Defendants exercised their Declarant Rights to cause the Association to enter into an agreement, dated April 8, 2019, with the City of Fredericksburg's Economic Development Authority (the "EDA Agreement").  (Am. Compl. ¶ 79, Ex. EE (ECF No. 51-21).)  The EDA Agreement relates to the development of a baseball stadium within the Project intended for minor league baseball games and other events.  (Am. Compl. ¶ 79, Ex. EE.)  It references a stadium agreement for the development of the stadium, and the rights and benefits accruing to the City under the stadium agreement, in return for which the City agreed to make an annual funding commitment of $1,050,000.  (Am. Compl. ¶ 80; EDA Agreement at 2.)  The EDA Agreement provides that, in consideration of the benefits to accrue to the Association in connection with locating the stadium within the Project and the marketing, promotional, and advertising benefits to be provided by the City to the Association under the EDA Agreement, the Association agrees to pay $105,000 annually to the City (the "Stadium Payment").  (Am. Compl. ¶ 79; EDA Agreement at 2.)

**B.    Plaintiffs' Complaint**

On April 20, 2021, Plaintiffs filed their initial Complaint against Defendants, raising five counts for relief.  (ECF No. 1.)  In its Memorandum Opinion and Order dated October 27, 2021

(ECF Nos. 22-23), the Court partially granted Defendants' first motion to dismiss (ECF No. 12), allowing Plaintiffs to proceed on Counts One and Two.[3]  By Order dated January 27, 2022 (ECF No. 50), the Court granted Plaintiffs leave to file an amended complaint, to (a) add CVAS Finance, LLC as a defendant, and (b) assert new claims for declaratory relief against Defendants (Count Three), and damages against the Successor Declarant Defendants and CVAS Finance, LLC (Counts Four, Five, and Six).  Additionally, the Court allowed Defendants to file a renewed motion to dismiss, but only as to Counts Three through Six.

Based on the allegations above, Plaintiffs advance one count based on the Declarant Loan (Count Three), and three counts based on the EDA agreement (Counts Four through Six). According to Plaintiffs, Defendants executed the Declarant Loan in breach of Article VI of the Declaration and the Declarant Loan "is the fraudulent vehicle by which Silver-affiliated landowners circumvented their obligations to fund Association operating expenses in early years of the Project to be passed through as a liability to be repaid by future third-party landowners by way of [A]nnual [A]ssessments imposed by the Association on its members to repay the Declarant Loan." (Am. Compl. ¶ 78.)  Further, Plaintiffs allege that, under the POA Declaration, the Declarant Control Period terminated upon the Foreclosure Defendant's loss of title to their parcels at the Tax Sale. (Am. Compl. ¶ 72.)  Accordingly, the Successor Declarants' use of their Declarant Rights to enter into the EDA agreement amounted to fraud. (Am. Compl. ¶ 79.) Plaintiffs contend that the Declarant Loan and EDA agreement harm them, because "upon installation of a building foundation, [Plaintiffs] will be liable for approximately twenty-four percent (24%) of annual assessments of the Association to fund the annual 'Declarant Loan

---

[3]     Counts One and Two attacked the 2018 Declarant Rights Transfer before the Tax Sale. (Compl. ¶¶ 111-27.)  Those counts remain unaltered in the Amended Complaint. (Am. Compl. ¶¶ 87-104.)

Payment' and Stadium Payment, compounded by the 15% charged by the Association manager in addition to the Declarant Loan Payment as part of their management agreement." (Am. Compl. ¶ 83.) Additionally, they suffer harm, because "[a]s Plaintiff's market their property for sale . . . the liabilities . . . materially impair the price purchasers are willing to pay Plaintiffs because a prudent purchaser accounts for Association liabilities and the assessments that will be imposed to fund the same." (Am. Compl. ¶ 84.)

In Count Three, Plaintiffs allege and seek declaratory judgment stating that "the Declarant Loan and any amounts due thereunder is contrary to the provisions of the Declaration, void and of no effect." (Am. Compl. ¶¶ 105–11.) In Count Four, for breach of contract, and Count Five, for fraud, Plaintiffs seek monetary damages based on the void 2018 Declarant Rights Transfer that enabled the Successor Declarant Defendants to cause the Association to enter into the EDA Agreement with the City, thereby creating an Association liability for which certain "Owners" of property in the Project pay a portion as part of their Annual Assessment. (Am. Compl. ¶¶ 112-31.) In Count Six, Plaintiffs seek monetary damages for tortious interference with business expectancies, also based on the EDA Agreement, claiming that it adversely affects Plaintiffs' property value and impairs the potential purchase price, as Plaintiffs market their property for sale. (Am. Compl. ¶¶ 132-43.)

### C.    Defendants' Motion

In response to Plaintiffs' Amended Complaint, on February 10, 2022, Defendants filed a Motion to Dismiss (ECF No. 54), moving to dismiss Plaintiffs' claims against them for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. In support of their Motion, Defendants argue that the Court lacks subject matter jurisdiction over Counts Three through Six, because Plaintiffs lack standing

7

to bring those claims and they are not yet ripe for adjudication. (Defs.' Mem. in Supp. of Mot. Pursuant to Fed. R. Civ. P. 12(b)(1) & (b)(6) to Dismiss Counts III-VI of the Amended Complaint ("Defs.' Mem.") at 7–9 (ECF No. 54).) Defendants also argue that Counts Four, Five and Six fail as a matter of law, because the Declarant exculpation clause of Section 5.3 of the POA Declaration bars them. (Defs.' Mem. at 6-7.) Additionally, Defendants argue that Count Three fails, because the statue of limitations bars it, it improperly seeks declaratory judgment for an alleged breach that has already occurred, and it fails to sufficiently allege breach. (Defs.' Mem. at 9-11.) Defendants further argue that Counts Four and Five fail for lack of damages incurred by Plaintiff. (Defs.' Mem. at 11-13.) Counts Five and Six fail, Defendants argue, because Virginia's "source of duty" and economic loss rules bar them. (Defs.' Mem. at 13-15.) Finally, Defendants argue that Count Six fails, because it does not allege particular business expectancies. (Defs.' Mem. at 14-15.)

On February 24, 2022, Plaintiffs filed their response in opposition. (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Counts III-VI of the Am. Compl. ("Pls.' Resp.") (ECF No. 55).) On March 2, 2022, Defendants filed their reply (Defs.' Reply to Pls.' Opp'n to Defs.' Mot. to Dismiss Counts III-VI of the Am. Compl. ("Defs.' Reply") (ECF No. 56)), rendering Defendants' Motion to Dismiss now ripe for review.

## II.    STANDARD OF REVIEW

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. A defendant moving for dismissal for lack of subject matter jurisdiction may either attack the complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based," or may attack "the existence of subject matter jurisdiction in fact, quite apart from any pleadings."

8

*White v. CMA Const. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations omitted). In either case, the plaintiff bears the burden of proof to establish jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint must assert more facts than those "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must suffice to "state all the elements of

9

[any] claim[s]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## III.    ANALYSIS

Before addressing Defendants' challenges to the merits of Plaintiffs' claims under Rule 12(b)(6), the Court must first address Defendants' challenges under Rule 12(b)(1), as those challenges call into question the subject matter jurisdiction of the Court.

### A.    Counts Three Through Six Do Not Fail For Lack of Subject Matter Jurisdiction.

Defendants argue that the Court must dismiss Plaintiffs' claims for lack of subject matter jurisdiction. (Defs.' Mem. at 7.) Specifically, Defendants claim that Plaintiffs have not alleged an injury in fact sufficiently imminent to constitute an injury that confers standing on them. (Defs.' Mem. at 7-9.) Similarly, Defendants contend that the speculative nature of Plaintiffs' injury renders the claims unripe. (Defs.' Mem. at 8-9.) As described below, the Court rejects these arguments, as Plaintiffs have sufficiently alleged standing at this stage.

To possess standing to sue under Article III of the Constitution, a plaintiff must sufficiently allege that it has: "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). To establish an injury-in-fact, a plaintiff "must show that they suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 621 (4th Cir. 2018) (quoting *Spokeo*, 578 U.S. at 338)). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace

10

those specific facts that are necessary to support the claim." *Hutton*, 892 F.3d at 620 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)).

Here, Plaintiffs allege numerous injuries that Defendants' actions have caused them to suffer. For example, and disposing of Defendants' attack on subject matter jurisdiction, Plaintiffs allege that Defendants' actions, including entering into the Declarant Loan and EDA Agreement, "materially impair the price purchasers are willing to pay Plaintiffs" as they "market their property for sale." (Am. Compl. ¶ 84.) As the owners of the affected parcels (Am. Compl. ¶ 48), this diminution in marketability constitutes an injury to Plaintiffs. Accepting Plaintiffs' allegations as true and making the required inferences in their favor, as the Court must at this stage, the Court infers from the phrasing of the allegation, "as Plaintiffs market their property for sale," that Plaintiffs are actively marketing their property and that Defendants' actions "materially impair" the price that they may receive. Thus, Plaintiffs have not alleged a hypothetical or conjectural injury. Instead, Plaintiffs have pled an actual or imminent injury that confers standing upon them to bring this suit. A favorable decision by the Court would redress Plaintiffs' injury by reducing the burdens that they claim impair the marketability of their property. Finally, by finding that Plaintiffs have pled an actual or imminent injury — not a hypothetical or conjectural one — the Court similarly rejects Defendants' argument that Plaintiffs bring unripe claims.

Of course, the evidence may yet belie Plaintiffs' injury allegations. Moreover, the Court's finding that Plaintiffs have adequately alleged an injury for standing purposes cannot be construed as a finding on the merits with respect to any of the elements that Plaintiffs must prove, including damages. However, at the pleading stage, the Court finds that Plaintiffs' have sufficiently pled facts to invoke the Court's subject matter jurisdiction.

11

### B.     Counts Four Through Six Fail to State a Claim Due to the Exculpatory Clause of Section 5.3 of the POA Declaration.

Defendants first move to dismiss all counts pertaining to the EDA Agreement for failure to state a claim, because the plain language of the contract bars them.  Defendants argue that Section 5.3 of the POA Declaration precludes Counts Four, Five and Six, because it holds the Declarant not liable to any Owner or occupant for any action of the Declarant and Plaintiffs had record notice of that provision when they acquired their parcels. (Defs.' Mem. at 6-7.)  Plaintiffs respond that this Court "has already ruled that Defendants' 'record notice' arguments are misplaced" and argue that Section 5.3 does not apply, because it only holds the Declarant not liable for actions to enforce any provision of the POA Declaration.  (Pls.' Resp. at 2.)

As discussed at length in the Court's opinion on the first motion to dismiss, Article Five of the POA Declaration concerns Declarant Rights.  (Mem. Op. at 15-26.)  In Section 5.1, the POA Declaration defines Declarant Rights, in Section 5.2, it authorizes transfer of Declarant Rights, and, in Section 5.3, it describes a regime of non-liability for actions (or inactions) taken in furtherance of Declarant Rights.  Section 5.3 of the POA Declaration, titled "No Obligations," states, in relevant part:

> Neither the Declarant nor its successors or assigns shall be liable to any Owner or occupant by reason of any mistake in judgment, negligence, nonfeasance, action or inaction or for the enforcement or failure to enforce any provision of this Declaration.

(POA Decl. § 5.3.)

First, Plaintiffs argue that the Court already decided this issue in their favor when it rejected Defendants' argument to dismiss the entirety of the initial complaint on the basis of Plaintiffs' record notice of the encumbrances and restrictions on their property within the Project in their first motion to dismiss.  (Mem. Op. at 12-15.)  However, Plaintiffs misstate the Court's

holding.  In its first opinion, the Court did not issue a blanket rejection of Defendants' record notice arguments.  Rather, it merely held that the Court must consider the validity or enforceability of a contractual provision separately from whether a party had record notice of that provision.  (Mem. Op. at 14-15 ("In each of these cases, the Supreme Court of Virginia analyzed the merits of a property restriction rather than blindly enforcing the restriction because one party had record notice of it.  Considering these cases and the purpose of the recordation statutes, the Court finds that notice of an encumbrance constitutes a question distinct from whether a party validly imposed that encumbrance at the time of recording.").)

Here, the parties do not dispute that Plaintiffs had record notice of the POA Declaration and Section 5.3 at the time that they acquired parcels within the Project.  Nor do Plaintiffs contest the validity of Section 5.3 as a limitation on the liability of the Declarant and its successors or assigns, only its applicability to Counts Four, Five and Six.  In fact, Plaintiffs assert the validity and enforceability of the POA Declaration in toto, stating that "[t]he [POA] Declaration and the rights thereunder constitute valid, binding and enforceable contracts between Defendants and any successor purchases of property, including but not limited to Plaintiffs." (Am. Compl. ¶ 113.)

Nevertheless, the Court conducts its own review of the exculpation clause of Section 5.3 and finds it enforceable.  "Although contract law generally does not, by its own force, limit liability based on tort concepts of fault, parties are of course free to contract for such limitations." *CITGO Asphalt Ref. Co. v. Frescati Shipping Co., Ltd.*, 140 S. Ct. 1081, 1089 (2020).  And, "[i]t is apparently not against the public policy of Virginia for one to contract against his own negligence in some situations." *Nat'l Motels, Inc. v. Howard Johnson, Inc. of Wash.*, 373 F.2d 375, 379 (4th Cir. 1967).  Indeed, "Virginia courts regularly enforce

13

exculpatory agreements." *Kocinec v. Pub. Storage, Inc.*, 489 F. Supp. 2d 555, 558 (E.D. Va. 2007). However, "such limitations of liability are not favored and are strictly construed." *Gill v. Rollins Protective Servs. Co.*, 722 F.2d 55, 58 (4th Cir. 1983).

"Under Virginia law, determining the validity of an exculpatory clause requires an examination of three factors such as (1) whether the clause contravenes public policy, (2) whether the clause could be readily understood by a reasonable person, and (3) whether the legal claim was within the contemplation of the parties when they included the exculpatory provision." *Turner v. Virginia Dep't of Med. Assistance Servs.*, 230 F. Supp. 3d 498, 509 (W.D. Va. 2017).

First, the Court analyzes whether to void the clause on public policy grounds, mindful that "courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain." *Estes Exp. Lines, Inc. v. Chopper Exp., Inc.*, 641 S.E.2d 476, 478 (Va. 2007). Because Defendants are private entities and Section 5.3 does not preemptively limit personal injury claims, it does not violate the public policy of Virginia to allow Defendants to benefit from the exculpatory agreement. *See Connect IT Sols., Inc. v. Fidelis Cybersecurity, Inc.*, 2019 WL 8112895, at *4 (E.D. Va. Jan. 28, 2019) ("An exculpatory agreement will typically be found to contravene public policy if it benefits a quasi-public entity."); *Hiett v. Barcroft Beach, Inc.*, 18 Va. Cir. 315 (1989), *rev'd on other grounds, Hiett v. Lake Barcroft Cmty. Ass'n, Inc.*, 418 S.E.2d 894 (Va. 1992) ("[S]uch a provision has been held void when contained in the contract of carriage of a common carrier, unless a reduced fare was charged; or in the contract of a public utility under a duty to furnish telephone service; or when imposed by an employer as a condition of employment." ); *Estes Exp. Lines*, 641 S.E.2d at 479 (limiting Virginia's prohibition on contractual releases of damages to "pre-injury release provisions

14

relating to personal injury."). Moreover, Plaintiffs do not assert any reason why Section 5.3 would violate public policy, and the Court cannot discern any on its own.

Second, a reasonable person could readily understand the terms of the provision, because it employs "clear and definite" language. *Trumball Invs., Ltd. I v. Wachovia Bank, N.A.*, 2005 WL 6148880, at *4 (E.D. Va. Apr. 15, 2005). Finally, the Court finds that breach of contract and tort claims are exactly the types of claims contemplated by the parties to the POA Declaration, as evidenced by the language of Section 5.3. (POA Decl. § 5.3 (no liability for "mistake in judgment, negligence, nonfeasance, action or inaction").)

Plaintiffs additionally contend that Section 5.3 does not apply to Counts Four, Five and Six based on the terms of the provision. Plaintiffs state that those counts "allege that Defendants used their voting control of the Association to enter into the Declarant Loan and the EDA Agreement, thereby forcing the Association, which includes Plaintiffs as members, to pay expenses that should be borne by Defendants entirely. . . . Those claims have nothing to do with the 'mistake in judgment, negligence, nonfeasance [or actions to enforce the Declaration]' as contemplated in Section 5.3." (Pls.' Resp. at 2.) However, the limitation of liability clause does not limit itself to "actions to enforce the Declaration," as Plaintiffs' alteration to the language of Section 5.3 demonstrates that they well know. The exculpatory clause's reference to enforcement of provisions of the Declaration functions disjunctively from other exercises of Declarant Rights, including action or inaction. Instead, Section 5.3 broadly limits the liability of the Declarant to any Owner or occupant for "any mistake in judgment, negligence, nonfeasance, action or inaction *or* for the enforcement or failure to enforce any provision of this Declaration." (POA Decl. § 5.3.) Thus, while Defendants' execution of the Declarant Loan and the EDA

15

Agreement does not constitute enforcement of the POA Declaration, it cannot seriously be said that entering into such financing agreements does not constitute an "action" of the Declarant.

Because Counts Four, Five and Six seek to hold the Successor Declarant Defendants and Finance liable for money damages in contract and tort for actions taken as Declarants, the Court finds that the exculpation clause of Section 5.3 bars those claims.

### C. Count Three Fails to State a Claim Due to the Statute of Limitations.

Defendants next argue that Virginia's five-year statute of limitations for breach of contract claims bars Count Three of Plaintiffs' Amended Complaint, which attacks the 2007 Declarant Loan. (Defs.' Mem. at 9-10 (citing Va. Code Ann. § 8.01-246(2)).) Plaintiffs assert that, because Count Three seeks equitable relief — declaratory judgment that the Declarant Loan violates Article Six of the POA Declaration — the Court must apply the doctrine of laches instead of the statute of limitations. (Pls.' Resp. at 6.) Well-settled Fourth Circuit law forecloses Plaintiffs' laches argument, and the statute of limitations bars Count Three as untimely.

Plaintiffs cite this Court's opinion in *Plumbers & Steamfitters Union Loc. No. 10 v. Waters* for the proposition that the doctrine of laches applies to claims for equitable relief, such as declaratory judgment. 451 F. Supp. 3d 543, 551 (E.D. Va. 2020). However, in that case, the Court left open the question of whether the statute of limitations or doctrine of laches applied, finding that either would bar the plaintiff's claims as untimely. *Id.* ("Here, the Court need not make a conclusive determination whether Plaintiff's claim constitutes an equitable claim, because Plaintiff's Complaint proves time-barred under either framework.").

In this instance, by contrast, the Court does not need to conduct a laches analysis, because the Fourth Circuit regularly applies the state statute of limitations for declaratory judgment

16

actions for breach of contract.[4] *See, e.g.*, *Manotas v. Ocwen Loan Servicing, LLC*, 794 F. App'x 259, 264 (4th Cir. 2019) ("Here, the Manotases bring such a claim for declaratory relief, and, consequently, their claim is subject to Virginia's statute of limitations for breach of contract."); *Skyline Restoration, Inc. v. Church Mut. Ins. Co.*, 20 F.4th 825, 833 (4th Cir. 2021) ("Thus, Skyline . . . may have recovered from Church Mutual for declaratory judgment and breach of contract had it filed its claims within three years from the date of loss. Regardless of the merits of Skyline's claims, these claims are time barred under the applicable statute of limitations."). Accordingly, the Court will apply Virginia's statute of limitations for breach of contract in evaluating the timeliness of Count Three.

In this case, Virginia Code § 8.01-246(2) provides the applicable statute of limitations for Count Three. Section 8.01-246(2) provides that "an action for breach of a written contract must be filed within five years after the cause of action accrues." *Arrington v. Peoples Sec. Life Ins. Co.*, 458 S.E.2d 289, 291 (Va. 1995).[5] Because, in Count Three, Defendants seek a declaratory

---

[4]     Nor would the doctrine of laches likely avail Plaintiffs, for proof of filing a claim outside the statute of limitations satisfies Defendants' burden to show Plaintiffs' lack of diligence and triggers an inference of prejudice to Defendants. *See White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990) ("The defendant may show lack of diligence[, the first element of laches,] either by proof that the action was not commenced within the period provided by the applicable statute of limitations or by facts otherwise indicating a lack of vigilance. . . . [T]he defendant 'is aided by the inference of prejudice[, the second element of laches,] warranted by the plaintiff's delay.'"). Furthermore, Plaintiffs have not attempted to prove that application of laches would result in inequity to Plaintiffs. *See King v. Richardson*, 136 F.2d 849, 862 (4th Cir. 1943) ("[When a] suit is brought after the statutory time has elapsed, the burden is on the complainant to show . . . that it would be inequitable to apply [laches] to his case."). Indeed, the only inequity that would arise here would be if the Court allowed Plaintiffs to attack a contract that preexisted their affiliation with the Project by over ten years, under which the actual parties to the loan have carried out their rights and responsibilities for almost fifteen years, to render it invalid *ex post facto*.

[5]     Va. Code Ann. § 8.01-246 states:

Subject to the provisions of § 8.01-243 regarding injuries to person and property and of § 8.01-245 regarding the application of limitations to fiduciaries, and their

judgment stating that Defendants breached the POA Declaration, a signed contract, by entering into the Declarant Loan, Section 8.01-246 governs. And, "a cause of action for breach of contract accrues and the limitation period commences to run from the date of the alleged breach." *Id.* According to the Amended Complaint, the cause of action accrued on January 31, 2007. (Am. Compl. ¶¶ 76, 105-11 (Alleging that "the Declarant-controlled Association" executed the Declarant Loan, "dated as of January 31, 2007," "[i]n breach of the [POA] Declaration, in particular Article VI," and "requesting that this Court enter judgment declaring the Declarant Loan and any amounts due thereunder is contrary to the provisions of the [POA] Declaration, void and of no effect.").)

Moreover, the parties do not dispute that Plaintiffs bring their claim outside of the applicable five-year time limit. The Declarant Loan states, on its second line, that it is "Dated as of January 31, 2007." (Declarant Loan at 2.) Although Defendants did not publicly notarize the loan until September 17, 2013, in executing the document the Borrower certified that "IN WITNESS WHEREOF, the Borrower has caused this Promissory Note to be signed by an authorized officer *on the date first written above*," indicating to the Court that the contract became effective as of January 31, 2007.[6] (Declarant Loan at 7 (emphasis added).) Plaintiffs

---

bonds, actions founded upon a contract, other than actions on a judgment or decree, shall be brought within the following number of years next after the cause of action shall have accrued:

. . .

2. In actions on any contract that is not otherwise specified and that is in writing and signed by the party to be charged thereby, or by his agent, within five years whether such writing be under seal or not.

[6]     The Declarant Loan imposes requirements on the Borrower beginning in September 2013 to report income and expenses to the Lender as a part of determining when payment of the principal and interest on the loan becomes due. (Declarant Loan at 2.) Considering that the loan was made between two Silver-owned entities, it seems reasonable to infer that the extension of

purchased their first parcels within the Project in May 2018, learned about the Declarant Loan in December 2021, and sued on the contract in their Amended Complaint on January 27, 2022. These facts demonstrate that Plaintiffs clearly bring their claim after the lapse of the applicable statute of limitations.

Finally, the Court finds it possible in this instance to decide the statute of limitations defense at the pleadings stage. A defendant may properly raise — and the Court may properly consider — a statute of limitations defense at the motion to dismiss stage "if the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). In the instant case, the face of the Amended Complaint provides the facts necessary to determine whether Plaintiffs' claim proves time-barred. Under Virginia law, a plaintiff must bring a breach of contract claim within five years of the date of the breach. Va. Code § 8.01-246; *Arrington v. Peoples Sec. Life Ins. Co.*, 458 S.E.2d 289, 291 (Va. 1995) ("[A]n action for breach of a written contract must be filed within five years after the cause of action accrues."). Plaintiffs allege that the breach occurred on January 31, 2007 (Am. Compl. ¶ 76), yet they did not file suit until January 27, 2022 — nearly fifteen years after the alleged breach of contract. Moreover, Plaintiffs have not alleged any other issues that might otherwise prevent the Court from considering a statute of limitations defense at the pleadings stage.

---

financing occurred on the effective date of January 31, 2007, and the parties did not notarize the document until September 2013, when the obligations came due. Regardless, even if the contract did not arise until notarization in 2013, this would not alter the Court's analysis, because September 2013 clearly precedes Plaintiffs' January 2022 claim by more than five years.

Because the Court finds that the five-year period afforded to breach of contract claims under Virginia law provides the applicable statute of limitations, the Court finds that Count Three of Plaintiffs' Amended Complaint proves untimely and must be dismissed.[7]

## IV.   CONCLUSION

For the reasons set forth above, the Court will GRANT Defendants' Motion to Dismiss (ECF No. 53) and DISMISS WITH PREJUDICE Counts Three, Four, Five and Six of the Amended Complaint.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date:  April 18, 2022

---

[7]      In light of the Court's holding that the statute of limitations bars Count Three, the Declarant Loan claim, and Section 5.3 bars each of the EDA Agreement counts, Counts Four, Five and Six, the Court need not reach Defendants myriad other arguments for dismissal of Counts Three through Six of the Amended Complaint, including failure to allege damages in Counts Four and Five, bar of Counts Five and Six by the source of duty and economic loss rules, and failure to allege any particular prospective purchaser for Count Six.